|  |  |
|---|---|
| **MICHAEL R. FANNING,** | |
| Plaintiff, | |
| v. | Case No. 17-cv-00126 (CRC) |
| **SENECA ONE REALTY LLC,** | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Michael R. Fanning is the Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers.  He brought this ERISA action seeking to recover unpaid contributions to the fund along with prejudgment interest, liquidated damages, audit and attorneys' fees, and litigation costs from Seneca One Realty, LLC ("Seneca One").  Despite being properly served, Seneca One has failed to respond to the complaint, the Clerk's entry of default, and the Court's Order to Show Cause why judgment should not be entered against it.  Fanning now moves for default judgment.  Finding that Seneca One is liable, the Court will grant the motion and enter judgment against the company in the amount of $8,343.87.

## I. Background

Seneca One entered a binding collective bargaining agreement with Local No. 17 of the International Union of Operating Engineers ("Local 17") for the work performed at One HSBC Center in Buffalo, NY.  Compl. ¶¶ 2, 6; <u>see also</u> Pl.'s Mot. Entry Default J., Ex. B (Agreement between Seneca One and International Union of Operating Engineers).  Fanning sues in his capacity as the Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("Central Pension Fund").  <u>Id.</u> at ¶ 1.  The

collective bargaining agreement between Seneca One and Local 17 requires the company to pay contributions to the Central Pension Fund for hours worked by employees covered by the agreement. Id. at ¶ 7.

The Central Pension Fund is an "employee benefit plan" and a "multiemployer plan" as those terms are defined under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002 ("ERISA"). With these designations come certain obligations. Under ERISA and the Central Pension Fund's Restated Agreement and Declaration of Trust ("Declaration"), Seneca One was obligated to self-report the number of hours worked by covered employees and make monthly contribution payments to the Central Pension Fund, which are calculated based on these hours. See Pl.'s Mot. Entry Default J. 3, 4. Specifically, the collective bargaining agreement requires Seneca One to pay the Central Pension Fund $2.15 per hour for every hour worked by a covered employee, effective as of January 1, 2012. See Pl.'s Mot. Entry Default J., Ex. B art. 16

Fanning alleges that from January 2013 to December 2015, Seneca One employed covered employees but failed to pay the corresponding, agreed-upon contributions to the Central Pension Fund. Compl. ¶¶ 7–9. The Declaration provides that an employer failing to make such payments is liable for the unpaid amount, liquidated damages of up to 20% of the unpaid amount, and interest at the annual rate of 9%, along with attorneys' fees, audit fees, and applicable litigation costs. Compl. ¶¶ 10, 12, 19; see also Pl.'s Mot. Entry Default J., Ex. A at § 4.5 (Declaration). Fanning is entitled as a third-party beneficiary of the collective bargaining agreement to enforce these terms. See Pl.'s Mot. Entry Default J. 3.

Seneca One was properly served on January 24, 2017. See Feb. 16, 2017 Return of Service, ECF No. 3. It did not respond to the complaint, and the Clerk of the Court entered default on February 17, 2017. See Feb. 17, 2017 Clerk's Entry of Default, ECF No. 5. Fanning

now seeks a monetary default judgment against Seneca One, comprised of unpaid contributions, accrued interest, liquidated damages, audit fees, attorneys' fees, and costs.

Section 502(e)(2) of ERISA provides for federal jurisdiction "in the district where the plan is administered." 28 U.S.C. § 1332(e)(2). Because the Central Pension Fund is administered in the District of Columbia, see Compl. ¶ 1, the Court may properly exercise jurisdiction over this case.

## II.    Standard of Review

The two-step procedure for requesting a default judgment has been set forth by this Court on multiple occasions. See, e.g., Boland v. Cacper Construction Corp., 130 F. Supp. 3d 379, 382 (D.D.C. 2015). A plaintiff first must request that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The Court then decides whether an entry of default judgment is warranted. Fed. R. Civ. P. 55(b). Default judgment is available when "the adversary process has been halted because of an essentially unresponsive party." Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011). "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." Id. After establishing liability, the Court makes an independent evaluation of the damages award, which it has "considerable latitude" to determine. Id. The Court may hold a hearing if necessary or can rely on "detailed affidavits or documentary evidence" submitted by plaintiffs in support of their claims. Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (quoting Fanning v. Permanent Sol. Indus., Inc., 257 F.R.D. 4, 7 (D.D.C. 2009)).

### III.    Analysis

#### A.    Liability

Plaintiffs filed this suit on January 19, 2017 to recover the damages prescribed by ERISA, the collective bargaining agreement, and the Declaration.  See Pl.'s Mot Entry Default J. 1.  Seneca One was timely served with a summons and the complaint on January 24, 2017, and the Clerk of the Court declared Seneca One to be in default on February 17, 2017.  Id.  On April 27, 2017, the Court issued an Order to Show Cause why judgment should not be entered for Plaintiff and set May 12, 2017 as the deadline for Seneca One to respond.  Seneca One has failed to respond to the complaint, the Clerk's entry of default, or the Court's Show-Cause Order.

Because the Clerk of the Court has entered default and Seneca One has failed to respond, the Court accepts Fanning's well-pleaded allegations and holds that Seneca One is liable and that entry of default judgment is appropriate.  See Elite Terrazzo Flooring, 763 F. Supp. 2d at 67. ERISA requires employers to make contributions to multiemployer plans "in accordance with the terms and conditions of" the relevant collective-bargaining agreements.  29 U.S.C. § 1145.  The Declaration specifies that contributions are due by the last day of the month following the month in which the work was done.  See Pl.'s Mot Entry Default J. 3; Decl. of Michael R. Fanning ("Fanning Decl.") ¶ 10.  It also provides that the Central Pension Fund's "Trustees may, by their respective representatives, audit and examine the pertinent employment and payroll records of each Employer . . . whenever such examination is deemed necessary or advisable by the Trustees . . . ."  Pl.'s Mot Entry Default J., Ex. A at 1 (Declaration).  Plaintiff has submitted a payroll audit summary that shows Seneca One underpaid the Central Pension Fund by $3,097.44 between January 2013 and December 2015.  See Fanning Decl. ¶ 11, Ex. C (Payroll Audit Summary).  By failing to make the payments required by the Declaration, Seneca One is liable for damages.

The Court may enter default judgment when a defendant makes no request "to set aside the default" and gives no indication of a "meritorious defense." Fanning, 257 F.R.D. at 7. Seneca One, as noted above, has not responded to the complaint since being served in January 2017. An entry of default judgment is therefore warranted against it.

B.     Damages

Fanning must prove the damages to which he is entitled "to a reasonable certainty." Elite Terrazzo Flooring, 763 F. Supp. 2d at 68. Under ERISA, employers are required to pay any delinquent contributions, interest on unpaid contributions at a rate determined under the plan, liquidated damages at a rate of up to 20 percent or an additional interest assessment at the rate provided under the plan (whichever is higher), and legal fees. 29 U.S.C. § 1132(g)(2). The Declaration entitles the Central Pension Fund to *both* liquidated damages and interest in the event that an employer fails to make the required contributions. See Pl.'s Mot. Entry Default J., Ex. A § 4.5(b–c). The Declaration also obligates employers to pay all costs and audit expenses incurred in enforcing its provisions. Id. at § 4.5(e). When a defendant has failed to respond, the Court must make an independent determination—by relying on affidavits, documentation, or an evidentiary hearing—of the sum to be awarded as damages.

As support for the requested damages, Fanning has submitted a sworn declaration in support of his complaint, a payroll audit summary provided by the auditing firm Calibre CPA Group, PLLC, and a declaration from his attorney, R. Richard Hopp. The audit summary provides sufficient detail regarding the alleged underpayments: it classifies them by month and by employee, and includes a summary of the auditor's findings regarding the underpayment. See Pl.'s Mot. Entry Default J., Ex. C. The auditor's findings included instances of the employer failing to report new employees from date of hire, "omit[ing] hours last week worked," omitting

overtime hours, and failing to report vacation paid upon termination.  Id. at 1.  According to the report, the underpayments from January 2013 to December 2015 total $3,097.44.  Id.  Central Pension Fund paid the auditing firm $2,200 to conduct the audit in September 2016.  Fanning Decl. ¶ 10.

The auditor's report also calculates the total interest, accruing at 9% per annum, at $367.55.  See Compl. ¶ 11; Pl.'s Mot. Entry Default J., Ex. D (Summary of Interest Calculations).  This figure was calculated as of November 18, 2016, and the auditor indicates that additional interest accrues at the rate of $0.77 per day.  Id.  Therefore, because 238 days have passed since the November 18, 2016 calculation, an additional $183.26 is due in interest, for a total of $550.81.

Seneca One is also liable for liquidated damages up to 20% of the delinquent amount. See Pl.'s Mot. Entry Default J.; Ex. C § 4.5(b).  For the purposes of this motion, Fanning asks the Court to award liquidated damages equal to 15% of the unpaid contributions.  See Pl.'s Mot. Entry Default J. 6.  15% of $3,097.44 (the delinquent amount) equals $464.62.  Id., Ex. D (15% LD line item in summary table).  The $2,200 cost of the audit is also covered by the Declaration and therefore owed to the fund.  See id.; Fanning Decl. ¶ 10.  Collectively, the unpaid contributions, $3,097.44; interest owed, $550.81; liquidated damages, $464.62; and audit expenses, $2,200, equal $6,312.87 in total damages.  See Fanning v. Warner Center, 999 F. Supp. 2d 263, 266–67 (D.D.C. 2013) (finding that plaintiff was entitled to audit fee, interest, and liquidated damages by relying on declarations from CEO and attorney of record).

C.    Attorney's Fees

ERISA also requires defendants to pay a plaintiff's reasonable attorney's fees.  See 29 U.S.C. § 1132(g)(2)(D).  In support of the requested attorney's fees, Fanning provides the

declaration of R. Richard Hopp, a partner at the law firm O'Donoghue & O'Donoghue LLP and Fanning's counsel of record. See Pl.'s Mot. Entry Default J., Decl. of R. Richard Hopp ("Hopp Decl."). Mr. Hopp states that he has extensive experience in labor and employee benefits law, having practiced in this field since joining this firm in 1991. Hopp Decl. ¶ 1. He notes that the firm worked 5.2 hours on this case, a standard amount for a case of this nature, at an hourly billing rate of $280, which is well below the usual rate for this work. Id. at ¶¶ 2–4. Given that the firm charged well below the market rates approved by courts in similar cases, the Court finds the rate to be reasonable. See, e.g., Boland v. Smith & Rogers Constr. Ltd., 201 F. Supp. 3d 144, 149 (D.D.C. 2016) (approving market rates of $590 and $615); Providence Constr. Corp., 304 F.R.D. at 37; Flynn v. Pulaski Constr. Co., 2006 WL 3755218, at *2 (D.D.C. Dec. 19, 2006). Hopp also includes a spreadsheet documenting the preparation and work included in the 5.2 billable hours. See Hopp Decl, Ex. A. Fanning is therefore entitled to receive a total of $1,456 in attorney's fees. In addition, the litigation costs included a $400 filing fee and a $175 charge for service of process on Seneca One. See Hopp Decl., Exs. B–C (invoices documenting the expenses). Because this constitutes the type of "detailed . . . documentary evidence" on which courts may rely, the Court concludes that Fanning have justified the litigation hours and costs expended in this case. Accordingly, the Court holds that Fanning is entitled to $2,031 in attorney's fees and costs.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Fanning's Motion for Entry of Default

Judgment.  The Court will issue an Order consistent with this opinion.



_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  _July 14, 2017_